CROSS WOOD PRODUCTS, INC., Plaintiff-Appellee, *v.* RICHARD W. SUTER *et al.*, Defendants-Appellants.

First District (2nd Division)    No. 81-560

Opinion filed June 9, 1981.

Richard J. Prendergast, Ltd., and William T. Rodeghier, both of Chicago, for appellants.

Robert Handelsman and Emil Shafran, both of Chicago (Robbins, Coe, Rubinstein & Shafran, Ltd., of counsel), for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

This is an interlocutory appeal, taken pursuant to Supreme Court Rule 307(a)(1) (73 Ill. 2d R. 307(a)(1)), from the circuit court's entry of a preliminary injunction prohibiting defendants Richard W. Suter and National Material Handling, Inc. (hereafter collectively or individually referred to as Suter), from soliciting sales of wood pallet products in a specific geographic area near Chicago. The sole issue raised is whether the circuit court's entry of the preliminary injunction constituted an abuse of discretion.

Plaintiff Cross Wood Products, Inc. (Cross Wood), is engaged in the business of arranging the sale and delivery of wood pallets and other wood products from the producing entity to the purchasing entity. (In other words, Cross Wood is a middle-man operation.) The company hired Richard Suter as a salesman in June 1977. No written employment contract or restrictive covenant was entered into by the parties then or at any subsequent time. Cross Wood's owner, Joseph Reyes, allegedly trained Suter in the methods of salesmanship.

While employed at Cross Wood, Suter was assigned a specific territorial area in which he was to solicit sales for the company. In return for his services, Suter received a draw of $1,200 per month against his commissions, which were set at 50% of the profit on any sales he procured. The draw was increased to $2,800 per month and the commission rate to 60% on January 1, 1980.

In his position as salesman, Suter was responsible for developing a customer base, soliciting orders therefrom, finding a manufacturer to supply the order, and ensuring delivery of the order to the customer. Suter was charged with ascertaining the cost of production and with setting the price quoted to the customer.

While yet in the employ of Cross Wood, Suter incorporated National Material Handling, Inc., on September 23, 1980. Reyes of Cross Wood learned from a customer that Suter was in business for himself and on that date, November 14, 1980, terminated Suter's relationship with Cross Wood and filed the instant action. The two count complaint was based on unfair competition and breach of an employee's fiduciary duty to his employer. Cross Wood sought, *inter alia*, an injunction against Suter's solicitation of business, an accounting for all sales made by Suter through National Material Handling, damages, and punitive damages.

At the hearing for a preliminary injunction, Suter related that the salesman's duties at Cross Wood included development of a customer list and maintenance of a business relationship with these purchasers. He admitted that after forming the rival entity, he had taken and filled orders from three purchasers for the benefit of National Material Handling, although he was still employed with Cross Wood. Suter noted that all three customers had formerly done business with Cross Wood.

Joseph Reyes testified that after Suter's departure, Cross Wood's business declined 30-35%. Reyes believed this drop was because Suter had taken his customers over to his own company. Reyes admitted that he did not hire a replacement for Suter for nearly three months after the latter's termination. The reason for this delay was not stated. Reyes also related that no one was working Suter's territory full-time after the latter's termination. Finally, Reyes stressed the highly competitive nature of the field.

The circuit court issued a preliminary injunction against Suter covering only that geographic area which had been Suter's territory at Cross Wood. The injunction prohibited Suter from engaging in the business of solicitation of sales or from selling wood pallets and other wood products in that area. The injunction was to be in effect until further order of the court. In its order, the circuit court noted that the injunction was fashioned so as not to deprive Suter of his livelihood, since he could continue to operate anywhere outside the defined area. From this order, Suter appeals.

I

■■ In order for a preliminary injunction to issue, the plaintiff must establish (1) that he possesses a clearly ascertained right which needs protection, (2) that he will suffer irreparable harm without the injunction, (3) that there is no adequate remedy at law for his injury, and (4) that he is likely to be successful on the merits of his action. (*Bromberg v. Whitler* (1978), 57 Ill. App. 3d 152, 155, 372 N.E.2d 837.) In addition, the court must conclude that the grant of the temporary relief outweighs any possible injury which the defendant might suffer by its issuance. (*Iroquois*

*Industries Corp. v. Popik* (1980), 91 Ill. App. 3d 505, 507, 415 N.E.2d 4.) The findings of the circuit court on the matter of the issuance of a preliminary injunction will not be disturbed unless they are against the manifest weight of the evidence, demonstrating an abuse of that court's discretion. *Popik*, at 507.

Suter asserts that the circuit court abused its discretion in entering the injunction in this case because Cross Wood allegedly failed to demonstrate the existence of a clear and ascertainable right needing protection, failed to show that it would be irreparably harmed in the absence of injunctive relief, and had an adequate remedy at law.

## A

■■ We cannot agree with Suter's first contention that Cross Wood failed to demonstrate that it possessed a clear and ascertainable right requiring protection. The record indisputably indicates that Suter began solicitation of customers for his own business while he was still employed by Cross Wood. This court has recognized that an ongoing concern has the right to be free from interference with its customers by those in its employ, and that such right is entitled to protection during the pendency of a lawsuit brought to vindicate the right. *ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.* (1978), 62 Ill. App. 3d 671, 683, 379 N.E.2d 1228, *appeal denied* (1978), 71 Ill. 2d 616 (hereinafter *ABC* I).

■■ The existence of this protectible right is not contradictory to the recognized right of an employee to enter into competition with a former employer upon leaving such employ (absent a restrictive contractual provision to the contrary). Indeed, an employee may legitimately go so far as to form a rival corporation and outfit it for business while still employed by the prospective competitor. (See *James C. Wilborn & Sons, Inc. v. Heniff* (1968), 95 Ill. App. 2d 155, 163, 237 N.E.2d 781.) However, the employee may not go beyond such preliminary competitive activities and commence business as a rival concern while still employed. To do so is a breach of the employee's common law fiduciary duty of loyalty to his employer, and gives rise to a cause of action, the remedies for which could include entry of an injunction restraining such competition. (See *ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.* (1980), 90 Ill. App. 3d 817, 827, 413 N.E.2d 1299 (hereinafter *ABC* II); *ABC* I, 62 Ill. App. 3d 671, 683-84; see generally Restatement (Second) of Agency §393, Comment e, at 218 (1958).) Therefore, Cross Wood clearly fulfilled the first step toward procuring a preliminary injunction in this case.

## B

Suter's remaining two contentions, that Cross Wood failed to demonstrate that it would suffer irreparable harm in the absence of an injunction

and that Cross Wood has an adequate remedy at law, are best discussed together.

■■ An alleged injury is defined as irreparable when it is of such nature that the injured party cannot be adequately compensated therefor in damages or when damages cannot be measured by any certain pecuniary standard. (*Simpkins v. Maras* (1958), 17 Ill. App. 2d 238, 245, 149 N.E.2d 430, quoting *Washingtonian Home v. City of Chicago* (1917), 281 Ill. 110, 119, 117 N.E. 737.) Alternately, the term has been defined to encompass not such injury as is beyond the possibility of repair or beyond the possibility of compensation in damages, but that species of injury that ought not be submitted to on the one hand or inflicted on the other. *Edelman Brothers, Inc. v. Baikoff* (1934), 277 Ill. App. 432, 443; see also *General Electric Co. v. UAW Local 997* (1955), 8 Ill. App. 2d 154, 165, 130 N.E.2d 758.

■■ An adequate remedy at law is one which is clear, complete and as practical and efficient to the ends of justice and its prompt administration as the equitable remedy. *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 549, 370 N.E.2d 223.

Essentially, Suter's position is that Cross Wood is not entitled to equitable relief because the injuries which it suffered from his admittedly wrongful actions are allegedly computable with certainty. Suter states that the sum of damages is the exact dollar amount of profit which he earned from the sales on his own behalf to three of Cross Wood's customers during the time he was employed by Cross Wood. The fault with this argument is that it overlooks an additional type of injury suffered by Cross Wood from Suter's wrongful activities. Not only did Cross Wood lose pecuniary profits when Suter actually made sales to Cross Wood customers (injury type 1), Cross Wood also lost its competitive position during the nearly eight-week period in which Suter operated a rival business to the complete ignorance of his employer (injury type 2). During that eight-week period, Suter engaged in surreptitious cajoling of Cross Wood's customers for his own benefit, while Cross Wood rested upon the justifiable assumption that Suter's business dealings were for the company's sole benefit. Upon discovering the error of this assumption, Cross Wood had already been placed at a competitive disadvantage, having been out of the sales market in Suter's area.

■■ We believe that this second type of harm was of an intangible though very real nature which was not readily subject to measurement by any certain pecuniary standard. The injury is therefore classified as irreparable. Computation of damages for this type of injury is not practical. As a result, the remedy at law therefor is neither clear, complete, nor efficient, and thus cannot be classified as "adequate." We conclude the circuit court made no error in entering the preliminary injunction on the basis of the

circumstances surrounding injury type 2 as shown to exist at the time of the hearing.[1]

## II

We have found that the circuit court was warranted in entering a preliminary injunction against Suter at the time of the hearing due to the harm suffered by Cross Wood in the loss of its competitive standing during the eight-week period in which Suter was in breach of his fiduciary duty of loyalty.

However, we believe that the mere passage of time has altered the circumstances under which the circuit court acted. Suter has now been prevented from competing with Cross Wood in his formerly assigned territory at least since the entry of the preliminary injunction on February 10, 1981. During this time, Cross Wood has been uninhibited from the opportunity to recapture, without Suter's competition, the clientele which had been wrongfully solicited without its knowledge. The mere passage of time together with the impact of the preliminary injunction has, we believe, served to return the parties to the status quo which existed just prior to that point at which Suter commenced violating his fiduciary duty of loyalty.

■■■ Thus, the second type of harm suffered by Cross Wood has now been rectified so far as is possible within the capabilities of the judicial system. No further beneficial purpose for Cross Wood without a commensurate harm to Suter will be served by allowing the injunction to have continued effect. This court may dissolve an injunction as to its prospective effect when the requisite showing is made that its continuation is no longer equitably justified. (*Benson v. Isaacs* (1961), 22 Ill. 2d 606, 609, 177 N.E.2d 209; *Eads Coal Co. v. United Mine Workers of America, District 12* (1975), 27 Ill. App. 3d 692, 702, 327 N.E.2d 115, *appeal denied* (1975), 60 Ill. 2d 596.) We believe that the circumstances warrant such action, and we therefore dissolve the preliminary injunction as of the date upon which the mandate of this court is issued. The case is remanded to the circuit court for continuation of the proceedings in which Cross Wood seeks a remedy at law for the first type of harm allegedly suffered by it (the loss of profits on the sales by Suter to Cross Wood's customers while the former was employed by Cross Wood).

The injunction heretofore issued by the circuit court of Cook County is dissolved. The cause is remanded as set forth above.

*Injunction dissolved; action remanded.*

HARTMAN, P. J., and PERLIN, J., concur.

---

[1] Suter does not argue against nor will we disagree with the circuit court's unexplicated finding that the record showed the likelihood that Cross Wood would succeed on the merits of its cause of action (element 4).