GEORGE DANGELES *et al.*, Plaintiffs-Appellants, v. WILLIAM MUHLENFELD *et al.*, Defendants-Appellees.

Second District   No. 2—89—0186

Opinion filed December 1, 1989.—Rehearing denied January 16, 1990.

Linda A. Bryceland, of David A. Novoselsky & Associates, of Chicago (David A. Novoselsky, of counsel), for appellants.

James K. Horstman, Manya A. Pastalan, and Lloyd E. Williams, Jr., all

of Williams & Montgomery, Ltd., of Chicago (Barry L. Kroll, of counsel), for appellees.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiffs, George Dangeles and First American Mortgage Company (First American), filed a six-count complaint in the circuit court of Du Page County against defendants William Muhlenfeld, Nancy Gaskin, Lisa Carpenter, and Centennial Mortgage Company (Centennial) alleging misconduct by the individual defendants in the establishment and operation of Centennial, a business competing with First American, and seeking recovery under various theories. Plaintiffs appeal the dismissal of counts asserting claims for breach of fiduciary duty and tortious interference with prospective economic advantage, and the entry of summary judgment in favor of defendants on their count for breach of contract and on portions of their count for tortious interference with contractual relations.

Plaintiffs filed their six-count first amended complaint on November 26, 1986. The pertinent allegations are as follows. Plaintiffs alleged that First American was in the business of mortgage brokering and lending and that from its formation until the middle part of 1985, Muhlenfeld and Dangeles each owned 50% of its stock. During that period of time, Muhlenfeld was president and chief operating officer of First American in charge of its day-to-day operations. In April 1985, Muhlenfeld and Dangeles executed a written agreement for the sale of Muhlenfeld's stock to Dangeles. The agreement contained the following covenant:

> "In the event MUHLENFELD leaves the employ of [First American], he agrees that he will not employ any of the employees away from [First American]."

In July 1985, Muhlenfeld resigned from his position with First American and thereafter established and operated Centennial.

Count I of the first amended complaint alleged that Muhlenfeld violated the covenant above by hiring First American employees Nancy Gaskin and Lisa Carpenter. Count II sought rescission of the sale of Muhlenfeld's stock, alleging that in connection with the sale Muhlenfeld misrepresented the value of First American's assets and made other misrepresentations. In count III, plaintiffs advanced a claim for breach of fiduciary duty. Count IV advanced a claim for tortious interference with contractual relationships. Plaintiffs alleged that First American had contractual relationships with Horizon Federal Savings and Loan Association (Horizon) and Citicorp Savings and Loan (Citicorp), which funded loans originated by First American. Plaintiffs fur-

ther alleged that First American had contractual relationships with numerous salespeople. Plaintiffs alleged that defendants falsely advised Citicorp, Horizon, and the salespeople that First American was without proper business management and was in financial difficulties, and as a result, First American "lost the services" of certain lending institutions and "lost the benefit of the employment of certain employees." Count V asserted a claim for tortious interference with prospective economic advantage based on the same communications alleged in count IV. Count VI, like count II, sought rescission of the sale of stock, based on misrepresentations as to the value of First American assets.

On January 9, 1987, defendants filed a motion to dismiss the first amended complaint pursuant to section 2—615 (Ill. Rev. Stat. 1987, ch. 110, par. 2—615) for failure to state a cause of action. By order dated March 5, 1987, the circuit court dismissed counts III, V, and VI, granting plaintiffs leave to amend these counts. Plaintiffs elected not to file amendments, and defendants filed answers to the remaining counts. Subsequently, defendants moved for summary judgment on the remaining counts.

On August 3, 1988, the circuit court granted defendants' summary judgment motion with respect to count I and to count IV, except for First American's alleged business relationships with Horizon and two employees. The court denied the motion with respect to count II.

Thereafter, plaintiffs moved for voluntary dismissal of count II and the remainder of count IV. The circuit court granted this motion and in an order dated January 27, 1989, set forth the previous dismissal order of March 5, 1987, the summary judgment order of August 3, 1988, and found no just reason to delay enforcement or appeal of those orders.

Plaintiffs initially contend that the circuit court erred in dismissing count III of its first amended complaint which advanced a claim based on breach of fiduciary duty. Plaintiffs contend that count III properly stated a cause of action as pleaded. Defendants respond that the allegations pertaining to breach of fiduciary duty are all defective. With respect to certain alleged wrongful conduct, defendants contend that there is no allegation that the acts occurred during the duration of Muhlenfeld's fiduciary duty to First American to support a cause of action. Defendants also contend that other allegations were not pleaded with sufficient specificity to survive a motion to dismiss.

We agree with defendants that none of the allegations in question were, as pleaded, sufficient to support a cause of action. Accordingly, we conclude the trial court properly dismissed count III.

On review of the dismissal of a complaint for failure to state a cause of action, the reviewing court must determine the legal sufficiency of the complaint. (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 516, 513 N.E.2d 387.) While pleadings are to be liberally construed, that does not lessen the obligation of the plaintiff to set out facts necessary for recovery under the theory asserted in the complaint. (*Kirk*, 117 Ill. 2d at 516, 513 N.E.2d at 391.) A pleader is required to set out the ultimate facts that support his cause of action. (*Estate of Johnson v. Condell Memorial Hospital* (1988), 119 Ill. 2d 496, 509, 520 N.E.2d 37.) A complaint is insufficient if it states mere conclusions, whether of law or fact. (*Wolcowicz v. Intercraft Industries Corp.* (1985), 133 Ill. App. 3d 157, 160, 478 N.E.2d 1039.) Pleadings which state mere conclusions and characterize acts rather than set forth facts are insufficient to state a cause of action. *People ex rel. Roseman v. Trachtman* (1985), 139 Ill. App. 3d 5, 9, 487 N.E.2d 77.

We first consider plaintiffs' allegations in count III that Muhlenfeld breached a fiduciary duty owed to First American in that he:

"(a) operated a competing business, namely, CENTENNIAL MORTGAGE COMPANY;

(b) solicited customers of FIRST AMERICAN MORTGAGE COMPANY to do business with CENTENNIAL MORTGAGE COMPANY;

(c) solicited valued employees of FIRST AMERICAN MORTGAGE COMPANY to terminate their employment with FIRST AMERICAN MORTGAGE COMPANY and to work for him at CENTENNIAL MORTGAGE COMPANY;

(d) informed lending institutions with whom plaintiff funded loans originated by the plaintiff that the plaintiff was without proper business management and expertise and was in financial difficulty;

(e) informed plaintiffs' sales force that the plaintiff was without proper business management and expertise and was in financial difficulty."

Defendants contend that these allegations cannot sustain a cause of action because it is not alleged that any of this conduct occurred during a time when Muhlenfeld owed First American a fiduciary duty, that is, prior to Muhlenfeld's resignation as an officer of First American. We agree.

Despite plaintiffs' assertion, unsupported by citation of authority, that as a former officer Muhlenfeld owed First American a continuing duty, it is clear that after his resignation, Muhlenfeld owed First

American no fiduciary duty. (See *Voss Engineering, Inc. v. Voss Industries, Inc.* (1985), 134 Ill. App. 3d 632, 638, 481 N.E.2d 63.) We are aware, as plaintiff points out, that resignation of an officer will not sever liability for transactions completed after termination of the party's association with the corporation if the transactions began during the existence of the relationship or were founded on information acquired during the relationship. (*Comedy Cottage, Inc. v. Berk* (1986), 145 Ill. App. 3d 355, 360, 495 N.E.2d 1006.) This principle is not implicated by plaintiffs' allegations. It is not alleged that Muhlenfeld solicited customers or employees for Centennial, or engaged in any demonstrable business activity prior to resigning from First American, and, hence, no breach of fiduciary duty appears in the allegations. (See *TAD, Inc. v. Siebert* (1978), 63 Ill. App. 3d 1001, 1005-06, 380 N.E.2d 963; see also *Radiac Abrasives, Inc. v. Diamond Technology, Inc.* (1988), 177 Ill. App. 3d 628, 633, 532 N.E.2d 428.) Nor is it alleged that the communications with financial institutions and First American's sales force occurred while Muhlenfeld owed First American a fiduciary duty.

These allegations are not saved by the principle prohibiting transactions based on information acquired during a former officer's association with a corporation. That principle cannot be read so expansively as to encompass the allegations here. It has been stated that in our economy based on free competition " '[o]ne who works for another cannot be compelled to erase from his mind all of the general skills, knowledge, acquaintances and the over-all experience which he acquired during the course of his employment.' " (*Siebert*, 63 Ill. App. 3d at 1005, 380 N.E.2d at 966, quoting *Revcor, Inc. v. Fame, Inc.* (1967), 85 Ill. App. 2d 350, 357, 228 N.E.2d 742, 746.) The instant allegations implicate only this type of general information. We are aware of *Smith-Shrader Co. v. Smith* (1985), 136 Ill. App. 3d 571, 483 N.E.2d 283, which broadly imposes liability for solicitation of employees because the defendant acquired knowledge of the employees' ability and training during his relationship with their employer. However, we decline to adopt this expansive reading of the principle prohibiting use of information acquired during a fiduciary relationship and adhere to the view expressed in other cases that solicitation of a business' employees by a former officer is not actionable. See *Radiac Abrasives*, 177 Ill. App. 3d at 633, 532 N.E.2d at 431.

With respect to the allegations of communications with financial institutions and First American's sales force, we note that our decision might be different were it alleged that confidential information was communicated. However, this is not the case, and, indeed, in

other counts, plaintiff alleges that the information communicated was false.

The remaining allegations of breach of fiduciary duty appear to pertain to the period of Muhlenfeld's employment with First American. They are that Muhlenfeld:

"(f) misappropriated funds and other personal property belonging to the plaintiff for his personal use;

(g) approved loans to borrowers knowing that the borrowers were incapable of repaying the loan, and without obtaining collateral adequate to secure the loans;

(h) engaged in other conduct detrimental to plaintiff's business."

The allegation of misappropriation is conclusory and unsupported by specific allegations of fact and is therefore improper. (See *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 427-28, 430 N.E.2d 976.) The allegation of improper approval of loans does not, as pleaded, implicate considerations of fiduciary duty, as mere negligence rather than disloyalty may be involved.

Finally, the general allegation that Muhlenfeld "engaged in other conduct detrimental to plaintiff's business" is insufficient to plead a cause of action.

As count III does not contain well-pleaded facts establishing a breach of fiduciary duty, the circuit court committed no error in dismissing this count with leave to amend.

Plaintiff First American next contends that the circuit court erred in dismissing count V of its first amended complaint against defendants Muhlenfeld, Gaskin, Carpenter, and Centennial which advanced a claim for tortious interference with prospective economic advantage. In count V, plaintiff alleged that First American maintained business relationships with certain financial institutions, Horizon and Citicorp, which funded loans originated by First American, and that First American maintained contractual relations with certain salespeople. Plaintiff further alleged that defendants, knowing of these relations, interfered with the relationships by falsely advising the financial institutions and sales force that First American was mismanaged and experiencing financial difficulties. Plaintiff alleged that it lost the services of the financial institutions and lost certain employees who terminated their relationship with plaintiff.

Although the circuit court dismissed this count, the common law record provided us does not disclose the basis for the dismissal. However, plaintiff states in its appellate brief that this count was dismissed because the complaint lacked sufficient specificity. Defendants'

motion to dismiss set forth several bases for dismissal, namely, that the count failed to allege plaintiff had a reasonable expectation of entering into further business relationships with the financial institutions, failed to allege plaintiff lost the business relationship with the financial institutions, failed to identify the sales persons involved, and failed to allege plaintiff had a reasonable expectancy of continuing business relationships with these unidentified sales persons. These same arguments are made in defendants' appellate brief. Plaintiff maintains that all the elements of the tort are well pleaded, citing *Galinski v. Kessler* (1985), 134 Ill. App. 3d 602, 480 N.E.2d 1176.

■ The elements of the tort of interference with prospective economic advantage are: (1) the existence of a valid business relationship or plaintiff's reasonable expectancy of entering into a valid business relationship; (2) defendant's knowledge of this relationship or expectancy; (3) intentional interference by defendant inducing termination of the relationship or preventing the expectancy from ripening into a valid business relationship; and (4) damage to plaintiff as a result of the interference. *Delcon Group, Inc. v. Northern Trust Corp.* (1989), 187 Ill. App. 3d 635, 651, 543 N.E.2d 595; *Galinski v. Kessler* (1985), 134 Ill. App. 3d 602, 607, 480 N.E.2d 1176.

■ Here, plaintiff alleged an existing business relationship with the named financial institutions and with their sales persons. This was sufficient to allege the existence of a valid business relationship (*Galinski*, 134 Ill. App. 3d at 607, 480 N.E.2d at 1182), whereas an allegation of reasonable expectancy of entering into a valid business relationship is applicable where there has been no business relationship, a situation not present here. We are also satisfied that, contrary to defendants' contentions, the allegations in count V are sufficiently specific and adequately plead a cause of action for interference with prospective economic advantage. The dismissal of count V was error, and we reverse and remand for further proceedings on this count.

Plaintiffs next contend that the circuit court erred in granting defendant William Muhlenfeld's motion for summary judgment on count I of plaintiffs' first amended complaint. In count I, plaintiffs alleged that Muhlenfeld violated a covenant in the agreement for the sale of his interest in First American to George Dangeles. The pertinent covenant provided:

> "In the event MUHLENFELD leaves the employ of FAM, he agrees that he will not employ any of the employees of FAM away from FAM."

Plaintiffs alleged that Muhlenfeld violated this covenant by offering positions to two of First American's employees, Nancy Gaskin and

Lisa Carpenter, who subsequently terminated their employment with First American.

The circuit court held that the covenant was only violated if Muhlenfeld actively recruited employees of First American. After examining the materials supporting and opposing the motion, the court concluded that Gaskin and Carpenter arranged employment with Muhlenfeld only after leaving First American. Finding no genuine issue as to a material fact, the court entered summary judgment in favor of defendant Muhlenfeld.

Muhlenfeld's deposition testimony indicates that he hired Nancy Gaskin after she told him she had been fired from First American. This testimony was uncontroverted by any direct evidence. With respect to Lisa Carpenter, George Dangeles stated in his deposition that he had no direct knowledge of the transactions leading to her accepting employment with Muhlenfeld. Dangeles merely stated that because Carpenter was employed by Muhlenfeld, Muhlenfeld "employed her away."

■ A motion for summary judgment should only be granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c); *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867.) While a party against whom a motion for summary judgment has been filed need not prove his case at that preliminary stage, he is required to present some factual basis that would arguably entitle him to a judgment in his favor. *Fuentes v. Lear Siegler, Inc.* (1988), 174 Ill. App. 3d 864, 866, 529 N.E.2d 40.

■ On this record, plaintiffs have presented no evidence contrary to defendant's deposition evidence to show that Muhlenfeld approached or recruited Lisa Carpenter while she was still employed by First American. With respect to Nancy Gaskin, the uncontradicted deposition testimony establishes that she did not discuss employment with Muhlenfeld until after she left employment with First American.

Plaintiffs contend, however, that the deposition testimony of Irene Baluk and Joyce Leach, bookkeepers at First American, indicates that both Lisa Carpenter and Nancy Gaskin told them they had a job at Centennial before they left. Examination of those depositions does not support this assertion. In any event, this evidence is hearsay as to the defendant Muhlenfeld, the only defendant in count I. Evidence, such as this, which is inadmissible at trial is not admissible in support of or in opposition to a motion for summary judgment. (*Fearon v. Mobil*

*Joliet Refining Corp.* (1984), 131 Ill. App. 3d 1, 8, 475 N.E.2d 549.) Nor can it be inferred from the fact that these employees started with Centennial shortly after leaving First American and the other deposition evidence that Muhlenfeld enticed the employees away. The court below correctly found that no genuine issue of material fact existed.

Plaintiffs additionally argue that the circuit court erred in construing the covenant only to prohibit Muhlenfeld from recruiting First American's employees. Plaintiffs contend that properly construed, the covenant prohibits Muhlenfeld from hiring anyone who was an employee of First American when the agreement was executed. This position is untenable. The phrase "employ away" clearly requires that Muhlenfeld take the employee from a current position with First American. If Muhlenfeld were to recruit an individual no longer employed by First American, he could not be said to employ that employee "away." The circuit court correctly entered summary judgment for defendant Muhlenfeld on count I of the complaint. ·

Plaintiffs' last contention is that the circuit court erred in entering partial summary judgment in favor of defendants Muhlenfeld, Gaskin, Carpenter, and Centennial on count IV of its first amended complaint, alleging tortious interference with contractual relationships, as it pertains to the contractual relationship with Citicorp. The circuit court found there were no disputed issues of fact and granted defendants' motion for summary judgment.

■■ The elements of tortious interference with a contractual relationship are: (1) a valid and enforceable contract between the plaintiff and a third party; (2) the defendant's awareness of the contractual relationship; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the third party caused by the defendant's wrongful conduct; and (5) damages resulting from the breach. *Delcon Group, Inc. v. Northern Trust Corp.* (1989), 187 Ill. App. 3d 635, 650, 543 N.E.2d 595.

With their motion for summary judgment, defendants submitted the affidavits of employees of Citicorp which stated, inter alia, that Citicorp had not terminated its relationship with First American. These affidavits negate the existence of any breach of a contract by Citicorp. Plaintiff contends that other deposition evidence contradicts the affidavits and thus a genuine issue as to a material question of fact exists precluding summary judgment.

■■ We have examined the depositions referred to by plaintiffs and conclude that there is no direct evidence which contradicts the affidavits. In fact, Dangeles, in his deposition, states that he was not sure whether Citicorp or another lending institution actually termi-

nated the relationship. While Dangeles also filed a putative affidavit which states that Citicorp cut off business twice with First American, we will not consider this document, which actually contradicts his deposition testimony, as it is not signed, sworn to, or dated, and fails as an affidavit. (*Kohls v. Maryland Casualty Co.* (1986), 144 Ill. App. 3d 642, 645, 494 N.E.2d 1174.) Based on this record, the affidavits are uncontradicted, and the circuit court properly granted defendants summary judgment with respect to the claim of interference with a contractual relationship with Citicorp alleged in count IV of the amended complaint.

The judgment of the circuit court is affirmed as to counts I, III, and IV and reversed as to the dismissal of count V. The cause is remanded for further proceedings on count V.

Affirmed in part; reversed in part and remanded.

UNVERZAGT, P.J., and McLAREN, J., concur.